**Steven D. GARBER, Plaintiff,**

v.

**EMBRY–RIDDLE AERONAUTICAL UNIVERSITY, Defendant.**

**No. CV–01–746–PCT–PGR.**

United States District Court,
D. Arizona.

April 30, 2003.

Richard M. Grimsrud, Law offices of Richard M. Grimsrud, William Benjamin Fortner, Fortner Law Firm PA, Prescott, AZ for plaintiff.

J Jeffrey Coughlin, Robert S. Pecharich, Boyle Pecharich Cline & Whittington, Prescott, AZ, for defendant.

## ORDER

ROSENBLATT, District Judge.

This action was filed pursuant to the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12101 *et seq.* Steven Garber ("plaintiff") claims Embry–Riddle Aeronautical University ("defendant" or "University") retaliated against him for advocating on behalf of a disabled student. Pending before this Court are: (1) defendant's Motion for Summary Judgment (doc. 52); (2) plaintiff's Motion for Reconsideration (doc. 55); and (3) plaintiff's Motion for Summary Judgment (doc. 59).

### *FACTUAL HISTORY*

In 1998, plaintiff was employed by defendant as an adjunct professor. He was later offered a promotion to the Chair of defendant's College of Arts and Sciences and Professor of Social Sciences for the 1999–2000 academic year. Plaintiff sought to employ Anthony Godwin ("Godwin") as his computer work assistant shortly after he began working at the University. Plaintiff claims defendant resisted these efforts.

Godwin is a veteran with a service-connected knee disability.[1] Godwin had

---

1. Specifically, plaintiff claims that Godwin suffers from a knee injury/atrophied leg, gout,

protested some allegedly unsafe flight practices undertaken by defendant. As a result, plaintiff alleges defendant "put obstacles" in the way of hiring him. Plaintiff claims that when he persisted in employing Godwin he was demoted, his salary was reduced, he was relieved of his title as the Director of the School of Arts and Sciences, and his contract was not renewed.

From the time plaintiff was hired until he left the University, plaintiff received numerous reprimands from defendant for unprofessional conduct. Defendant decided not to renew plaintiff's contract on February 18, 2000. On February 23, 2000, plaintiff's supervisor informed him that he was "recommending a non-renewal" of his contract. Plaintiff was notified of this, in writing, on February 25, 2000. Plaintiff's contract was allowed to expire in May 2000.

## PROCEDURAL HISTORY

Plaintiff filed his original Complaint on April 26, 2001. The Complaint was amended on August 10, 2001. Essentially, plaintiff claims that his contract was not renewed in retaliation for advocating on behalf of a student with a disability and because he threatened to contact environmental authorities to report the "illegal dumping" of fuel on the tarmac at Love Field.[2]

The Amended Complaint contained causes of action for: (1) retaliatory discharge for advocating on behalf of a disabled individual under the ADA; (2) wrongful termination pursuant to the Arizona whistle-blower statute, Ariz.Rev.Stat. § 23–1501(3)(c)(ii); and (3) violations of the Racketeering Influenced Corrupt Or-

ganizations Act ("RICO"). 18 U.S.C. § 1961, *et seq.*

Plaintiff's RICO count was dismissed for failure to state a claim. The wrongful termination claim was dismissed for failing to file within the one-year statute of limitations. Ariz.Rev.Stat. § 12–541. The only remaining count is the retaliatory discharge claim.

On April 26, 2002, defendant filed the pending Motion for Summary Judgment detailing numerous legitimate nondiscriminatory reasons for not renewing plaintiff's contract. On November 4, 2002, plaintiff moved for reconsideration of the Court's Order dismissing his wrongful termination claim. On November 18, 2002, plaintiff also filed a Motion for Summary Judgment. Oral arguments on the pending Motions were held on March 24, 2003.

## DISCUSSION

### A. Motion for Reconsideration

■ A motion for reconsideration must show two things to provide a valid ground for reconsideration. First, it must demonstrate a credible reason why the court should reconsider its prior decisions. *All Hawaii Tours Corp. v. Polynesian Cultural Ctr.*, 116 F.R.D. 645, 648–49 (D.Haw. 1987), *aff'd in part, rev'd in part on other grounds*, 855 F.2d 860, 1988 WL 86203 (9th Cir.1988). Second, it must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *Id; In re Agric. Research & Tech. Group*, 916 F.2d 528, 542 (9th Cir. 1990).

■ Motions for reconsideration should not be used to ask the court "to rethink what the court had already thought

---

Hepatitis C, lung and gall bladder malfunction.

**2.** As discussed at the oral argument on May 6, 2002, the "dumping" of fuel consists of taking

a small sample of fuel (approximately one to two ounces) to make sure it does not contain any water or is not otherwise contaminated, then disposing of the sample on the tarmac.

through—rightly or wrongly" or to reiterate arguments previously raised. *In re Agric. Research & Tech. Group*, 916 F.2d at 542 ("Motions for reconsideration may properly be denied where the motion fails to state new law or facts").

█ Additionally, new arguments and new legal theories that could have been made at the time of the original motion may not be offered in a motion for reconsideration. Nor may the movant seek consideration of new evidence available before disposition of the matter. *Id.*

In dismissing the wrongful termination claim, this Court reasoned that plaintiff failed to comply with the one-year statute of limitations. Ariz.Rev.Stat. § 12–541. As argued in plaintiff's Motion, "[i]f that plaintiff filed a charge with the EEOC the day he is discharged and it takes more than one year for the EEOC to issue a right to sue letter, the plaintiff will be unable to litigate his cause of action for employment discrimination resulting in a wrongful discharge...." In essence, plaintiff now seeks reconsideration arguing that because violations of the Arizona whistle-blower statute necessarily implicate Title VII issues, and because Title VII requires an EEOC right to sue letter which can take more than one year, plaintiffs would be prohibited from litigating both Title VII and wrongful termination claims under one Complaint.[3]

The Court need not reach the merits of plaintiff's argument. First, this Court has already considered and rejected plaintiff's argument. To the extent plaintiff raises a new argument, it should have been raised at the time he responded to the Motion to Dismiss.[4]

Second, plaintiff does not provide any legal argument as to why reconsideration should be granted. Typically, reconsideration is allowed where there is "(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence ... (3) fraud ... (6) or any other reason justifying relief." Fed.R.Civ.P. 60(b). Plaintiff does not argue for reconsideration on any of the aforementioned bases. Plaintiff has not sustained his burden and reconsideration is denied.

## B. Defendant's Motion for Summary Judgment

Summary judgment should be granted pursuant to Federal Rule of Civil Procedure 56 only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling upon a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Defendant asserts two principle arguments in support of summary judgment. First, defendant argues that under no set of facts can plaintiff establish a *prima facie* case of retaliation. Second, defendant argues that it had legitimate nondiscriminatory reasons for not renewing plaintiff's contract and that plaintiff cannot show defendant's reasons were pretextual.

### 1. Plaintiff's Prima Facie Case

█ To successfully present a *prima facie* case of retaliation, plaintiff must estab-

---

3. Plaintiff's Motion for Reconsideration is quite confusing. Nonetheless, the Court reads the Motion to seek reconsideration on this basis.

4. The Court believes that plaintiff raised this argument in responding to the second Motion to Dismiss. As noted above, plaintiff's papers are rather unclear and the Court cannot be sure.

lish that he is engaged in an activity protected by the statute, that he suffered an adverse employment action, and that there was a causal connection between the protected activity and the adverse action. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1121, (9th Cir.2000)(en banc), *vacated on other grounds, U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002). Here, the only elements at issue are whether plaintiff engaged in a protected activity and whether there was a causal connection between the activity and any adverse employment action.

■ Plaintiff argues he was engaged in a statutorily protected activity—advocating on behalf of a disabled student. Defendant contends that plaintiff must show that "either he reasonably believed Godwin was disabled or that the University perceived him to be disabled. . . ."

In assessing reasonableness, the Court looks to the ADA's objective criteria. Therefore, in order for an impairment to be protected, it must be one that substantially limits one or more of the major life activities under the ADA. 42 U.S.C. § 12102(2)(A). Thus, defendant argues plaintiff "has failed to articulate how or why he believed any of the alleged disabilities suffered by Godwin limited his ability to perform a major life activity."

The record before this Court reveals that plaintiff had a reasonable basis to conclude Godwin was disabled under the ADA. At a minimum, plaintiff has articulated a sufficiently reasonable basis to withstand summary judgment. For instance, plaintiff was aware that Godwin was attending the University on a vocational rehabilitation program for disabled American veterans. Plaintiff observed him exhibit significant difficulty walking, that when he did walk he had a limp, and that one of his legs was atrophied. In addition, plaintiff noticed Godwin had diffi-

culty breathing, suffered from frequent bouts of pneumonia, and took copious amounts of pain medication.

While none of these symptoms necessarily results in the finding of a disability, under the ADA, plaintiff's observations clearly provide a reasonable basis for his conclusion that in attempting to secure Godwin a position as his computer work assistant he was advocating on behalf of someone with a disability.

Defendant also asserts that there are no genuine issues of material fact which support a causal connection between plaintiff's protected activity and the adverse employment action. Specifically, defendant argues that the decision not to renew plaintiff's contract was made on February 18, 2000, before plaintiff "report[ed] defendant to the Arizona Department of Environmental Quality (ADEQ) for alleged fuel dumping," the allegedly protected activity. Plaintiff's letter threatening to contact the ADEQ was not mailed to defendant until February 23, 2000, and was received on February 25, 2000.

Defendant's argument in this regard is problematic. Defendant seeks summary judgment on plaintiff's ADA retaliation claim, the only cause of action remaining. Yet defendant relies on irrelevant factual allegations in pointing out the lack of causal connection between plaintiff's advocating for Godwin, his demotion, and the decision not to renew his contract. For instance, defendant argues that plaintiff has not established he had a reasonable belief Godwin was disabled and therefore he could not have engaged in a protected activity. Then, in an attempt to demonstrate a lack of causation on that issue, defendant jumps to other factual allegations related to dumping fuel on the tarmac at Love Field. The threatened exposure to the ADEQ, however, is only relevant to plaintiff's wrongful termi-

nation claim under the Arizona whistle-blower statute. That cause of action was dismissed. Therefore, defendant's argument that there was no causal connection between plaintiff's threatened exposure to the ADEQ and the failure to renew his contract is irrelevant to the remaining retaliation claim under the ADA.

### 2. Pretext

■ Once the Court determines that plaintiff has sufficiently set forth his *prima facie* case for retaliation, the burden shifts to defendant to offer legitimate non-discriminatory reasons for the adverse employment action. *Barnett*, 228 F.3d at 1121; *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir.1987). After defendant has set forth legitimate nondiscriminatory reasons for the adverse employment action, the burden then shifts back to plaintiff to raise genuine issues of material fact that defendant's reasons are pretextual. *Barnett*, 228 F.3d at 1121.

■ Defendant provides a number of legitimate nondiscriminatory reasons for any adverse employment action suffered by plaintiff:

1. While plaintiff was employed as Chairman of the Arts and Sciences Department, he frequently missed weekly Department Chair meetings;

2. On a June 23, 1999 field trip plaintiff permitted a student, under his supervision, to impale the head of a dead prairie dog on a two foot wooden stick and attach it to the front of the University van;[5]

3. On another field trip plaintiff permitted a dog to ride in the University van, contrary to express policy;

4. Plaintiff permitted students to take their own vehicles on a field trip, contrary to express University policy;

5. Plaintiff permitted an offensive bumper sticker, stating, "Get off my ass, or I'll flick a booger on your windshield," to be prominently placed on a marked University van;

6. While driving a University van on a field trip, plaintiff took students to a saloon and consumed alcoholic beverages with them;

7. At a weekly management meeting plaintiff verbally attacked, ridiculed and berated faculty members, some of whom were not in attendance;[6]

8. In February 2000, plaintiff permitted someone unrelated to the University to use its logo, without the University's knowledge or approval, in relation to a private publication which was under scrutiny for possible fraudulent activities;

9. Plaintiff repeatedly ignored work-related requests from supervisors; and

10. Plaintiff asked a student to represent to the University that the student had distributed, collected, and delivered student evaluations, when it was plaintiff that had done so.

Defendant has clearly set forth numerous legitimate nondiscriminatory reasons for plaintiff's demotion and the decision not to renew his contract. Accordingly, plaintiff must now raise a genuine issue of

---

5. The van was clearly identifiable as a University van by signage on the exterior panels. Moreover, when plaintiff was confronted with the incident, he admitted knowing about it but claimed to have forgotten to remove it.

6. These attacks included allegations of an extramarital affair between two faculty members, that a former professor who had committed suicide was a pedophile, that one faculty member wanted to fire another, and that the Associate Director (who was present at the meeting) did not have the stomach for the job.

material fact suggesting defendant's reasons for the adverse employment actions were pretextual. *Barnett,* 228 F.3d at 1121.

Despite this burden, plaintiff fails to provide any evidence that there was any pretext involved. In fact, plaintiff does not even argue pretext. Nevertheless, the Court has reviewed the record for any indication that the defendant's actions were pretextual and has been unable to find any such evidence. It is on this basis the Court concludes summary judgment in favor of defendant is appropriate.

### C. Plaintiff's Motion for Summary Judgment

In his one paragraph Motion for Summary Judgment, plaintiff takes the position that summary judgment is warranted in his favor with respect to a very limited issue. Namely, that he had a reasonable belief that Godwin was disabled.

Notably, plaintiff's response to the defendant's Motion, concedes that the same issue presents questions of fact. The Court agrees that the issue of Godwin's alleged disability raises factual issues. However, because summary judgment is granted in favor of defendant on other grounds, the issue is moot.

IT IS ORDERED that defendant's Motion for Summary Judgment (doc. 52) is GRANTED.

IT IS FURTHER ORDERED that plaintiff's Motion for Reconsideration (doc. 55) is DENIED.

IT IS FURTHER ORDERED that plaintiff's Motion for Summary Judgment (doc. 59) is DENIED.

IT IS FURTHER ORDERED that because this Order disposes of the Amended Complaint in its entirety, the Clerk of Court shall enter judgment accordingly.