LYNCH, Circuit Judge,
concurring in the judgment.
I join Judge Stahl in declining to enforce the Board’s order.
The decade-long journey of this labor dispute has divided virtually every decision-making body that has reviewed it.
The Union first filed its unfair labor practices charge with the N.L.R.B.’s Regional Office in July 1993. In September 1993, the Regional Director issued a Complaint and Notice of Hearing; shortly thereafter, this hearing was first rescheduled and then postponed indefinitely. On January 2, 1997, the Regional Office reversed track, issuing an order partially withdrawing its Complaint and partially dismissing the charge. Then, on August 1, 1997, the Regional Office reversed track again, rescinding its January 2, 1997, decision and issuing an Amended Complaint and Notice of Hearing. After a hearing, the Administrative Law Judge dismissed the charge, finding that Haas had given proper notice of its intent to withdraw from the multi-employer bargaining group and that its later actions did not nullify that withdrawal. The ALJ also opined that even if the Board were to reject his conclusion, it should “take into consider *33 ation the extreme delay that occurred between the filing of the charge here and the trial of this case,” “none of [which] delay is attributable to Respondent,” and the fact that “[flor the majority of this period, Respondent was under the impression that the matter would be dismissed.” Haas Electric, Inc., 334 N.L.R.B. No. 107 app., 2001 WL 888294, at *22 (2001) (ALJ opinion appended to NLRB opinion).
While accepting the ALJ’s credibility determinations and factual findings, a majority of the Board rejected the conclusions and found both that Haas’s notice of withdrawal was not adequate and that, even if it were, Haas’s later actions were inconsistent with that withdrawal, as Haas attempted to have “the best of both worlds.” Haas Electric, 2001 WL 888294, at *4. The Chairman of the Board dissented on both points. The majority did not even discuss the ALJ’s request that the Board, in fashioning a remedy, consider the unfairness to Haas in imposing the rule after years of its expecting otherwise. And now a panel of this court is riven and two thoughtful opinions have been written, reaching opposite conclusions.
Haas, in my view, did give adequate notice to the union of his withdrawal effective with the termination of the 1990-1993 contract on June 30, 1993. The opposing conclusion of the majority of the Board, in my view, is not supported by substantial evidence. All members of this panel seem to agree that adequate notice was given, contrary to the Board majority’s conclusion. For the reasons Judge Stahl outlines, I see no doubt that both the Union and the multi-employer bargaining group, NECA, had actual notice of Haas’s intent to withdraw as of the end of June 1993 and that neither objected.
The first area of disagreement among the panel concerns whether Haas’s participation in later negotiations nullified its withdrawal, and of the relationship between the notice given and Haas’s subsequent conduct. The negotiations covered what can be thought of as two interrelated topics: part (a) concerned changes in the terms and provisions of contractual obligations on both labor and management through June 30, 1993, and part (b) concerned extensions of the contract beyond June 30, 1993. The union likely gave the concessions in part (a), at least in part, as a quid pro quo for the extensions in part (b). Haas was, of course, bound by the contract through June 30, 1993, and so had a legitimate interest in the first part of the interrelated negotiations. Accordingly, the fact that Haas was present at the bargaining about the existing contract was not inconsistent with its withdrawing effective June 30,1993.
The Board has said that, even if Haas’s written notice were clear and proper, the notice would be nullified by Haas’s later conduct. Haas Electric, Inc., 2001 WL 888294, at *4. The Board says Haas is trying to get “the best of both worlds” because the price tag for part (a) of the negotiations was part (b), the contractual extension. Haas obtained part (a) without paying the price of part (b), the Board majority says, and that is what is inconsistent.
While it is unclear from the Board’s opinion, the Board may be saying that Haas could have avoided all of this problem of supposed inconsistency by announcing at the negotiations that it was there for the limited purpose of protecting its interests through June 30, 1993. Id. at *5, n. 12.[1] Haas’s silence on this point, according *34 to the Board, cost it dearly. The Board may also have meant its “stand and announce” rule to play a more limited role— that of resolving any ambiguity in the minds of the union and other NECA members about why Haas was present at the negotiation. While perhaps it would have been wiser for Haas to do so, it is far from clear why an employer who has given proper notice and received no objection in return should have to restate its position in order to preserve it. Nothing in the labor agreement contained any such requirement.
Of coursé, if all parties had actual notice of a proper withdrawal effective June 30, 1993, then a “stand and announce” rule seems unnecessary since, as Chairman Hurtgen says, “there was no duty or need to explain this obvious point.” Id. at *8, n. 1 (Hurtgen, Chairman, dissenting).
And so we are left with the Board’s “best of both worlds” rationale. As the Board explained, this is not so much a “best of both worlds” problem as a “hedge your bets” problem — the Board’s theory is that Haas was preserving its options until it saw how the negotiations went. But the Board’s statement of the dimensions of the problem, outlined above, is too simple and, in my view, its result is not adequately explained. Many of the Board’s cases in this area arise where an employer had withdrawn, the contract had ended, and then the parties undertook new bargaining for new contracts. See, e.g., Int’l Ladies’ Garment Workers’ Union, 286 N.L.R.B. 226, 231, 1987 WL 89961 (1987), enforced, 853 F.2d 918 (3d Cir.1988); Dependable Tile Co., 268 N.L.R.B. 1147, 1984 WL 36081 (1984), enforced as modified sub nom., NLRB v. Hartman, 774 F.2d 1376 (9th Cir.1985); Michael J. Bollinger Co., 252 N.L.R.B. 406, 406, 1980 WL 12429 (1980), enforced, 705 F.2d 444 (4th Cir.1983); cf. Sheet Metal Workers’ Int’l Ass’n v. Herre Bros., Inc., 201 F.3d 231, 236 (3d Cir.1999). That Board precedent is concerned with a vastly different situation than this. In those cases, the employer’s interest in the present contract had ended. It is one thing to apply a “best of both worlds” rule to the problem encountered in the cases cited above. It is quite another thing to apply it to the different sort of problem presented by this case, the problem presented by continuing contractual obligations. Some explanation for such an extension is warranted, and the Board has given none.
Here, the withdrawing employer, Haas, was still bound by obligations through June 30, 1993, and was still entitled to the services of NECA on Haas’s behalf through that date. Part of what Haas was entitled to through June 30, 1993, was, as Judge Stahl says, not to stand alone, but rather to take advantage of what NECA offered. If the renegotiations of the obligations through June 30 led to lower wages, then Haas, as a member of NECA and as a union contractor, did not want to pay higher wages and thus price itself out of jobs. Perhaps the Board meant that because the quid pro quo for the renegotiated lower wages was an extended contract term, Haas could not legitimately restrict itself only to protecting its interests in the existing contract. If so, this appears to set up a Catch-22 situation for the withdrawing employer. And it appears to be inconsistent with the Board’s precedent. See Dependable Tile Co., 268 *35 N.L.R.B. 1147, 1147 (1984) (“If [the employer] had merely participated in the sessions in order to administer the expiring contract — to which [it] was admittedly bound — we would agree [that such action would not be] inconsistent with a stated intent to leave group bargaining and negotiate separately.”).
This leads to my differences with my colleagues. Judge Torruella views this case as a routine extension of Board policy to an analogous set of facts. I view the case as an application of a rule meant for one problem to another problem, so that the Board has effectively fashioned a new rule. In my view, the Board neither recognized the problem nor articulated any reason for the choice it made. Judge Tor-ruella has written persuasively about why the Board’s choice is within the permissible choices. As Judge Torruella’s opinion correctly states, issues of policy are left to the Board, so long as the Board does not transgress statutory language. Int’l Ass’n of Bridge, Structural & Ornamental Iron Workers, Local 3 v. NLRB, 843 F.2d 770, 775-76 (3d Cir.1988). It may be that application of the rule to the different problem presented by Haas is within the Board’s permissible policy choices; perhaps the behavior that Haas has engaged in would lead to instability in multi-em-ployer bargaining groups. I could not now conclude, absent further explanation, whether a policy choice by the Board to reach the result it has reached here would be within its authority under the Act. See BE & K Constr. Co. v. NLRB, — U.S. -, 122 S.Ct. 2390, 2401-02, 153 L.Ed.2d 499 (2002). I do not adopt Judge Torruel-la’s views because we may not affirm an agency’s decision on a ground not given by an agency, Gailius v. INS, 147 F.3d 34, 44 (1st Cir.1998), nor may we affirm an agency’s change in precedent on a ground not adequately explained, Citizens Awareness Network Inc. v. United States Nuclear Regulatory Comm’n, 59 F.3d 284, 290 (1st Cir.1995). My difference with Judge Stahl is that, in his view, the result the Board reaches, on these facts, violates the Act, and I am not prepared to say that.
The question of remedy also divides us. A remand to the Board is the usual appropriate remedy when the Board has not adequately expressed itself or appears to give an explanation in court not given in the agency opinion. Shaw’s Supermarkets, Inc. v. NLRB, 884 F.2d 34, 41 (1st Cir.1989). The remand rule is not absolute, and courts have engaged in weighing of different factors in fashioning appropriate remedies. Weighing against a remand is concern regarding fairness to Haas, which easily could have altered its primary conduct (e.g., “stood and announced”) had the Board provided better guidance as to this type of problem. In my view, the Board has, without recognition or thought, applied the solution to one problem to a qualitatively different problem, and that raises issues of fair notice to Haas.
As Judge Friendly noted almost forty years ago in NLRB v. Majestic Weaving Co., 355 F.2d 854 (2d Cir.1966):
Although courts have not generally balked at allowing administrative agencies to apply a rule newly fashioned in an adjudicative proceeding to past conduct, a decision branding as ‘unfair’ conduct stamped ‘fair’ at the time a party acted, raises judicial hackles.... And the hackles bristle still more when a financial penalty is assessed for action that might well have been avoided if the agency’s changed disposition had been earlier made known, or might even have been taken in express reliance on the standard previously established.
Id. at 860 (denying enforcement on Board order based on new rule and declining to remand to Board). This court adopted a *36 similar view in C.E.K. Industrial Mechanical Contractors, Inc. v. NLRB, 921 F.2d 350, 358 (1st Cir.1990), in which we refused to apply a new NLRB rule retroactively because it would “plainly disappoint reasonable private expectations existing at the time of the relevant conduct.” See also Retail, Wholesale & Dept. Store Union v. NLRB, 466 F.2d 380 (D.C.Cir.1972) (declining to enforce Board order giving retroactive effect to rule newly announced in adjudication).
The panel agrees that Haas gave adequate notice of his intent to withdraw. Board precedent told Haas he had a right to be present at bargaining concerning the existing contract. If the Board intended to require Haas to do more, it would have been fairer for it to make the guidelines clear. Further, neither of my colleagues is disposed toward a remand and this case needs to be decided. After almost ten years of litigation, the parties are entitled to some certainty and finality. See U.S. Airways, Inc., v. Barnett, — U.S. -, 122 S.Ct. 1516, 1526-27, 152 L.Ed.2d 589 (2002) (O’Connor, J., concurring). I thus vote to deny enforcement of the Board order.

. If so, such a "stand and announce” rule seems irrational because whether Haas received the benefit of part (a) without paying the cost of part (b) does not seem to turn at *34 all on whether Haas stood and announced its appearance for limited purposes at the negotiation. Haas did take advantage of the quid of union concessions before June 30, and did not pay the quo of contract extensions. Perhaps there is a rational connection between a "stand and announce” rule and the "best of both worlds" problem, but the Board has not explained what it is.