Argued and submitted May 17, affirmed June 26, petition for review denied December 24, 1996 (324 Or 488)

# Barbara AMMANN,
*Appellant,*

*v.*

# MULTNOMAH ATHLETIC CLUB,
*Respondent.*

(9408-05506; CA A88605)

919 P2d 504

Kevin L. Cathcart argued the cause for appellant. With him on the briefs was Clayton H. Morrison.

David H. Wilson, Jr., argued the cause for respondent. With him on the brief was Bullard, Korshoj, Smith & Jernstedt.

Before Edmonds, Presiding Judge, and Landau and Haselton, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff appeals from the trial court's dismissal of her action against defendant. ORCP 47 C. She argues that the trial court erred in granting summary judgment on her unlawful employment practices claims. ORS 659.425. We affirm.

Plaintiff has been employed by defendant, a fitness club, since 1988. In August 1993, plaintiff began a leave of absence to have surgery to remove a brain tumor. At the time, she was working 37-1/2 hours per week for defendant as a switchboard operator on Mondays, Tuesdays and Sundays and at the club's front desk on Wednesdays and Fridays. Her physician informed defendant that she would require three months to recuperate from the surgery before she returned to work. During that time, defendant had other employees work plaintiff's shifts. Later in August, plaintiff underwent the surgery and, as a result, she permanently lost all vision in her right eye, all hearing in her right ear, and suffered partial paralysis in her face.

In September, defendant hired LuAnn Walker to work as a switchboard operator. As part of her job, Walker worked plaintiff's shifts on Mondays and Tuesdays with the understanding that plaintiff would return to those shifts after she recovered. According to plaintiff, her supervisor at the club, Dennis Wright, called her in September and asked about her condition. Plaintiff explained about the complications from the surgery. Wright then said, "I'm thinking about taking you off the switchboard[.]" Plaintiff expressed shock and asked for an explanation. Wright replied that he believed that the job would be too much for her but that he could offer her 20 hours per week in the coat room. Plaintiff said that she did not want to work in the coat room because the work was seasonal and she would receive less pay. According to plaintiff, Wright then responded, "Well, I have just hired [Walker] to work on the switchboard 40 hours a week in the evening. What am I going to tell her now?" When plaintiff asserted again that she wanted to return to her switchboard job, Wright said, "Well, it's not set in stone."

On October 22, plaintiff called Jeannette Campbell, defendant's Human Resource director, and told her that she was not ready to return to work due to her current condition and that she did not know when she could return. She sent defendant medical reports regarding her current condition, which stated that her condition had not changed since the onset of the symptoms and that it could not be determined how long she would be impaired or when she could be expected to return to work. Another of plaintiff's physicians told Campbell that he could not recommend that plaintiff resume work at the club "for the present * * * but that in the not too distant future, the 4 hour a day AM work should be attempted."[1] On November 11, plaintiff sent a letter to Campbell that stated, "I am hoping and praying that I can be well enough to be back at both of my jobs by the beginning of January."

Apparently Wright learned of plaintiff's progress in early November and spoke to his supervisor, Stan Loop, regarding the matter. According to defendant, Loop had decided in 1991 to change the swing shift switchboard hours into a full-time position with benefits, because he felt that he would have less turnover in that position and would attract higher quality employees. At that time, Loop directed Wright to implement his decision as soon as Wright could do so without laying off employees. On November 12, 1993, Wright sent Campbell the following memo after speaking with Loop regarding plaintiff's condition:

> "[Plaintiff's] medical leave of absence began on August 5, 1993. At that time, her doctor submitted a good faith estimate of three months for her recovery time from her brain tumor surgery.

> "As you are aware, [plaintiff] has experienced some major complications as a result of her surgery (partial facial paralysis, eyesight and hearing problems). Her complete recovery is somewhat questionable at this point. At best, Barbara would *not* return to active work status until sometime in January, 1994.

---

[1] The "four hours a day" shift refers to another job with another employer which plaintiff held before her surgery.

> "[Loop] and I are of the opinion that it is in the best interest of this department to place LuAnn Walker on permanent full-time switchboard status.

> "[Plaintiff] would still become available for hours on the Front Desk and Switchboard as her condition permits when she returns. Please advise us on this matter."

Eventually, Wright's request was approved, and in early December, he informed Walker that she would become a "full time employee" and would be permanently assigned the swing shift switchboard duties Monday through Friday. In January, plaintiff was ready to return to work. However, as a result of the changes defendant had implemented, it offered plaintiff only her previous Wednesday and Friday front desk shifts and her Sunday switchboard shift. As a result, plaintiff was able to work only 20 hours per week instead of the 37-1/2 hours per week that she had worked before her surgery.

Plaintiff eventually brought this action against defendant under ORS 659.425, alleging, in part:

> "Defendant discriminated against plaintiff in compensation or the terms, conditions or privileges of her employment in violation of ORS 659.425(1) in one or more of the following particulars:

> "A. In reducing plaintiff's hours because of her physical impairment which, had the employer made a reasonable accommodation by holding her hours during her medical leave of absence, would not have prevented the performance of the work involved;

> "B. In reducing plaintiff's hours when she had a record of a physical impairment; and

> "C. In reducing plaintiff's hours when it erroneously regarded plaintiff as having a physical impairment which effected [sic] her employment."

Defendant then moved for summary judgment, resulting in the judgment before us.

■ On appeal, plaintiff claims error predicated on three main arguments. We note that no error occurs under ORCP 47 unless there is an issue of material fact that would permit an objectively reasonable juror to return a verdict for the

party opposing the summary judgment based on a cognizable legal theory. *Jones v. General Motors Corp.*, 139 Or App 244, 249, 911 P2d 1243 (1996). Plaintiff's arguments are based on ORS 659.425(1)(a) and.659.425(1)(c), which provide:

"(1) For the purpose of ORS 659.400 to 659.460, it is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because:

"(a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;

"\* \* \* \* \*

"(c) An individual is regarded as having a physical or mental impairment."[2]

**2.** Plaintiff's first two arguments concern whether defendant violated ORS 659.425(1)(a) by not employing plaintiff the same number of hours after she returned to work. She argues that defendant failed to reasonably accommodate her disabilities because, according to her, the statute required defendant to reinstate her to her former hours "or a

---

[2] ORS 659.400(1) defines a "disabled person" as

"a person who has a physical or mental impairment which substantially limits one or more major life activities, has a record of such an impairment or is regarded as having such an impairment."

ORS 659.400(2)(a) defines major life activity as including, but not limited to

"self-care, ambulation, communication, transportation, education, socialization, *employment* and ability to acquire, rent or maintain property." (Emphasis supplied.)

ORS 659.400(2)(c) provides:

" 'Is regarded as having an impairment' means that the individual:

"(A) Has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer or supervisor as having such a limitation;

"(B) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of others toward such impairment; or

"(C) Has no physical or mental impairment but is treated by an employer or supervisor as having an impairment."

reasonable equivalent [thereof]." Plaintiff's argument presents an issue of statutory interpretation, which requires us to discern the legislature's intent when it enacted the statute. We do so by first examining the statute's text and context.

The text of ORS 659.425 does not support plaintiff's interpretation that the statute required defendant to reinstate plaintiff to her former hours of work. It is clear from the text of the statute that the phrase "with reasonable accommodation" modifies the phrase "physical or mental impairment." When so construed, ORS 659.425(1)(a) prohibits discrimination in employment-related practices when, with reasonable accommodations, an employee with a physical or mental impairment is able to perform the work involved.[3] In this case, plaintiff does not argue that she needed the other 17-1/2 hours of work to enable her to physically or mentally perform her work duties, nor does she argue that defendant failed to reasonably accommodate her disabilities by not allowing her sufficient leave time in order to recuperate from the effects of her surgery.[4] *See* OAR 839-06-245(1)(d)(A).

---

[3] The Bureau of Labor and Industries has similarly interpreted ORS 659.425. OAR 839-06-205(1) defines "accommodation" as

"a modification by the employer of the work site, job duties, or other requirements of a position *for the purpose of enabling a person with a disability to perform the work involved.*" (Emphasis supplied.)

OAR 839-06-245 provides, in part:

"ORS 659.425 requires an employer, upon request by an employee with a disability to provide reasonable accommodation for that person's physical or mental impairment *when the accommodation will enable that person to perform the work involved in the position occupied or sought.*

"(1) *Accommodation is a modification or change in one or more aspects or characteristics of a position* including but not limited to:

"(a) Location and physical surroundings;

"(b) Job duties;

"(c) Equipment used;

"(d) Hours, including but not limited to:

"(A) Continuity (extended breaks, split shifts, medically essential rest periods, treatment periods, etc.); and

"(B) Total time required (part-time, job-sharing).

"(e) Method or procedure by which the work is performed." (Emphasis supplied.)

[4] Although plaintiff argues that defendant did not provide a reasonable accommodation because it did not provide reasonable medical leave when it reduced her hours, that argument is made in the context of the claim that, as part of a

Rather, plaintiff alleges in her complaint, that "[a]fter returning to work plaintiff was able to perform all the functions of her job *without accommodation* from defendant." (Emphasis supplied.) We hold that as a matter of law, plaintiff has not alleged facts or produced evidence that raise a genuine issue about whether defendant provided reasonable accommodation to enable plaintiff to return to her original duties as defined by the statute. The trial court did not err in granting summary judgment on her claim under ORS 659.425(1)(a).

■        Plaintiff also argues:

"Even if accommodation was not required by ORS 659.425(1)(a) a genuine issue of material fact remains regarding defendant's discrimination by erroneously perceiving plaintiff as unable to perform [the] job due to disability in violation of ORS 659.425(1)(c)[.]"

In *Melvin v. Kim's Restaurant, Inc.*, 308 Or 177, 776 P2d 1286 (1989), the court held that an employee has a valid claim under ORS 659.425 when the employee is not in fact impaired but the employer treats the employee as if impaired. As we understand plaintiff's argument, she asserts that despite her impairments she is able to perform her prior duties as a switchboard operator and receptionist but that defendant has treated her otherwise. Plaintiff points to two occurrences that, according to her, support an inference that her reduction in hours was based on an erroneous perception that she was vocationally disabled.

In considering plaintiff's arguments, it is important to keep in mind that defendant offered plaintiff upon her return in January the same job duties that she had enjoyed previously, but for fewer hours. Thus, the thrust of her argument is necessarily that defendant cut the number of hours that were available to her on the switchboard because of an erroneous perception of the extent of her impairment. Plaintiff first points to her conversation with Wright in September 1993, in which he said that he thought that the switchboard position would be "too much" for plaintiff and later said,

---

reasonable accommodation under the statute, defendant was required to employ her for the same hours or the reasonable equivalent thereof after her return to work.

"Well, I have just hired [Walker] to work on the switchboard 40 hours a week in the evening. What am I going to tell her now?" Plaintiff argues that this evidence demonstrates that defendant reassigned her Monday and Tuesday switchboard shifts to Walker as early as September because it *erroneously* perceived that she could not perform those duties. Defendant, however, produced uncontroverted evidence that it did not permanently assign plaintiff's Monday and Tuesday shifts to Walker until December.

Moreover, the statute requires an act of discrimination accompanied by a discriminating intent for a violation to occur. The problem with plaintiff's reliance on the September conversation is that the uncontroverted evidence indicates that when defendant made the reassignment to Walker, the only information that defendant had about plaintiff's condition was that she was unable to work at that time and that it was undetermined when her condition would change. Thus, at the time of the alleged discriminatory reassignment, defendant's perception of plaintiff's condition was accurate, not erroneous as plaintiff claims. Moreover, plaintiff continued to be unable to work during the months of November and December when Walker was permanently assigned to the switchboard. Accordingly, a reasonable juror could not conclude that defendant reassigned plaintiff's Monday and Tuesday swing shift switchboard hours due to an erroneous perception of plaintiff's ability to work the additional shift.

Plaintiff also points to the conversation she had with Wright in December in which he said that he did not think that she should work at *the front desk* because of her vision problems. Plaintiff, however, concedes that when she told Wright that she was physically able to do the job, Wright said nothing more regarding the subject and that in January, she was offered all of her former shifts at the front desk when she returned to work. Again, a reasonable juror could not conclude from the December conversation that defendant reduced plaintiff's *switchboard duties* because of an erroneous perception that her visual impairment prevented her from performing that job. Plaintiff's other arguments do not warrant discussion. In sum, the trial court did not err in granting summary judgment.

Affirmed.