Argued and submitted December 16, 2003, reversed and remanded
September 15, 2004

Anthony STAMPER,
*Appellant,*

*v.*

SALEM-KEIZER SCHOOL DISTRICT,
a public organization pursuant to Oregon law,
*Respondent.*

01C-13698; A117746

97 P3d 680

Roger Hennagin argued the cause and filed the briefs for appellant.

Kim E. Hoyt argued the cause for respondent. With her on the brief was Garrett, Hemann, Robertson, Jennings, Comstock & Trethewy, P.C.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Plaintiff brought an action against his employer, Salem-Keizer School District, alleging that employer violated Oregon and federal law because it discriminated against him by failing to reasonably accommodate his disability. Employer moved for summary judgment. The trial court granted employer's motion and entered judgment dismissing plaintiff's claim. Plaintiff appeals. We reverse and remand.

On review of the trial court's ruling granting employer's motion for summary judgment, we determine whether the summary judgment record, viewed in the light most favorable to plaintiff, shows that there were no genuine issues of material fact and that defendant was entitled to judgment as a matter of law. No genuine issue of material fact exists if no objectively reasonable juror could return a verdict for plaintiff on his claims. Plaintiff has the burden of producing evidence on any issues raised in the motion as to which he has the burden of persuasion at trial. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997).

Plaintiff was injured in a car accident. As a result of his injury, plaintiff developed severe hyperacusis, an "abnormal hearing sensitivity." *Stedman's Medical Dictionary* 846 (27th ed 2000). Plaintiff's hyperacusis causes him intense, debilitating headaches whenever he is exposed to loud noises or to moderate noises for an extended period. At the time of his injury, plaintiff worked as an eighth-grade math teacher. After the accident, plaintiff applied for and received long-term disability benefits. Plaintiff and his doctors agreed that plaintiff could not continue to work in a classroom setting on a full-time basis because of the noise produced in that environment. Plaintiff notified employer of his condition in mid-1997 and later indicated that he wanted to continue working for employer on a full-time basis but could not work full time in a classroom setting because of his extreme sensitivity to noise. In response to plaintiff's request, defendant offered plaintiff a part-time tutoring job and a teaching position. The tutoring job provided no guaranteed salary or benefits and the teaching position also paid only a fraction of plaintiff's

salary and benefits as a full-time teacher. Plaintiff accepted both positions for the 1997-98 school year with the ultimate goal of returning to the classroom. At that time, plaintiff's doctors believed that plaintiff might be able to return to full-time classroom teaching if he was treated for his condition. During the 1998-99 school year, plaintiff also taught part time. In the summer of 1999, plaintiff's doctors determined that even part-time teaching exposed plaintiff to too much noise and they told him that he should no longer teach in a classroom setting at all. Plaintiff notified employer of his doctors' determinations, but the district did not offer plaintiff any other work. Instead, it gave plaintiff a one-year, unpaid, medical leave of absence.

From early 1998 until January 2000, plaintiff repeatedly told employer that he wanted an administrative transfer to a full-time position in a nonclassroom setting. Plaintiff also applied for such positions. Plaintiff alleges that, between 1998 and 2000, he applied for 12 separate full-time positions for which he was qualified but that other candidates were hired for those vacancies. In January 2000, employer offered plaintiff an administrative transfer to a full-time position with a quiet environment that began in the fall of 2000. Plaintiff accepted that offer.

Plaintiff subsequently brought an action against employer in federal court, alleging that employer had failed to meet its obligation to reasonably accommodate his disability under both Title I of the Americans with Disabilities Act of 1990 (ADA), 42 USC §§ 12111-12117 (2000), and a similar requirement under ORS 659A.112.[1] Employer moved for and was granted summary judgment on plaintiff's ADA claim. The court transferred plaintiff's remaining claim to state court. Employer then moved for summary judgment on plaintiff's state claim, contending that (1) there was no issue of material fact about whether employer reasonably accommodated plaintiff; (2) plaintiff's request for accommodation was unreasonable in light of the collective bargaining agreement (CBA) between employer and its employees; (3) plaintiff's lost wages were the result of a voluntary reduction in hours and

---

[1] The events underlying plaintiff's claim occurred before the 2001 renumbering of the relevant statutes. References in this opinion are to the new numbers.

therefore could not form the basis of a valid discrimination claim; (4) plaintiff's application for long-term disability insurance benefits estopped him from alleging that he was protected by the relevant statutes; and (5) there was no factual issue about whether employer, if it failed to reasonably accommodate plaintiff, caused plaintiff any damages. The trial court granted the motion on the first and fourth grounds asserted by employer. Plaintiff appeals, arguing that summary judgment was improper because there are factual issues about whether employer reasonably accommodated him and whether his application for insurance benefits estops him from asserting that he was protected by Oregon and federal law. Employer responds that the first and fourth grounds for its summary judgment motion below support the trial court's judgment and that, even if they do not, we must affirm the judgment on the second and third grounds that employer asserted in its motion.

■ ■   We first consider whether the record shows that there is a factual issue about whether employer failed to reasonably accommodate plaintiff. Whether an employer has met its burden to reasonably accommodate an employee is ordinarily a question of fact for the jury. *Anglin v. Dept. of Corrections*, 160 Or App 463, 475 n 10, 982 P2d 547, *rev den*, 329 Or 357 (1999). In response to employer's motion for summary judgment, plaintiff contended that employer failed to reasonably accommodate him because, although employer offered plaintiff an administrative transfer to a position that accommodated his hyperacusis, employer's accommodation was unreasonable because employer did not accommodate plaintiff within a reasonable time. Plaintiff asserts that there is evidence in the record that the delay was caused by employer's unreasonable refusal to engage in a meaningful interactive process with plaintiff about how to accommodate plaintiff's condition.

ORS 659A.112 provides, in part:

"(1)   It is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because an otherwise qualified person is a disabled person.

"(2)  An employer violates subsection (1) of this section if the employer does any of the following:

"* * * * *

"(e)  The employer does not make reasonable accommodation to the known physical or mental limitations of an otherwise qualified disabled employee who is a job applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer."

Under ORS 659A.115, a person is otherwise qualified if "the person, with or without reasonable accommodation, can perform the essential functions of the position." Reasonable accommodation may include "reassignment to a vacant position." ORS 659A.118. Similarly, 42 USC section 12112(b)(5)(A) prohibits employers from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" Under the ADA, a reasonable accommodation

"may include—

"(A)  making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

"(B)  job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."

42 USC § 12111(9). As plaintiff notes, ORS 659A.139 provides that "ORS 659A.112 to 659A.139 shall be construed in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as amended."

In arguing that the record creates a factual issue about whether employer reasonably accommodated him,

plaintiff relies, in part, on a federal regulation. 29 CFR section 1630.2(o)(3) (1995) provided that "[t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." Federal courts generally have interpreted section 1630.2(o)(3) to require an employer to participate in a meaningful interactive process with an employee once the employee requests an accommodation for his or her disability.[2] The Oregon legislature has enacted no equivalent statute, nor has the Bureau of Labor and Industries promulgated any rule to that effect. Plaintiff notes that section 1630.2(o)(3) is a construction of the term "reasonable accommodation" by the Equal Employment Opportunity Commission (EEOC) and that the term occurs in similar provisions of Oregon law and the ADA.[3] Plaintiff contends that the federal regulation and the federal courts' interpretation of it are therefore incorporated into Oregon law by reason of ORS 659A.139.

Employer and the trial court apparently agreed with plaintiff's assertion. Employer argued that the record demonstrated that it had engaged in such a process and also had reasonably accommodated plaintiff. The trial court concluded that:

"1.   [Employer] engaged in an interactive process with plaintiff that satisfied [employer]'s obligations under both the Americans with Disabilities Act and Oregon law;

---

[2] The Ninth Circuit has held that the process is mandatory and noted that "[a]lmost all of the circuits to rule on the question [of whether the reasonable interactive process is permissive or mandatory] have held that an employer has a mandatory obligation to engage in the interactive process and that this obligation is triggered either by the employee's request for accommodation or by the employer's recognition of the need for accommodation." *Barnett v. US Air, Inc.*, 228 F3d 1105, 1112 (9th Cir 2000), *vac'd on other grounds sub nom US Airways, Inc. v. Barnett*, 535 US 391, 122 S Ct 1516, 152 L Ed 2d 589 (2002).

[3] *See, e.g.*, ORS 659A.112; ORS 659A.115; ORS 659A.118; 42 USC §§ 12111, 12112 (2000). For the purposes of our analysis, we assume without deciding that the relevant provisions are in fact textually similar.

"2. [Employer] made reasonable accommodations to plaintiff throughout the relevant period of this lawsuit; [and]

"3. [Employer] was not obligated to grant plaintiff's specific accommodation requests because [employer] had already provided [plaintiff] reasonable accommodations."

Although federal courts addressing the issue generally have held that section 1630.2(o)(3) requires an employer to engage in a meaningful interactive process with an employee, the inquiry into whether an employer has failed to reasonably accommodate the employee does not end if the trier of fact determines that the employer failed to engage in such a process. Instead, the question then becomes whether the employer could have reasonably accommodated the employee but did not. *See, e.g., Loulseged v. Akzo Nobel Inc.,* 178 F3d 731, 736 (5th Cir 1999). If the trier of fact answers that question in the affirmative, assuming that the employee is otherwise covered by the ADA, the employer has not met its obligation to reasonably accommodate the employee. *See id.* Thus, if an employer fails to engage in a meaningful interactive process and fails to provide the employee with an adequate accommodation, but no reasonable accommodation of the employee was possible or the employee was otherwise excluded from protection under the ADA, then the employer has acted reasonably and has not violated the ADA. Conversely, if an employer engages in a meaningful interactive process but fails to provide an adequate accommodation, and a reasonable accommodation was possible, then the employer may not have satisfied its reasonable accommodation obligation.

With the described federal court interpretation of section 1630.2(o)(3) in mind, we turn to Oregon law. The question of the extent to which ORS 659A.139 requires us to interpret "similar terms" in Oregon law in the same way those terms have been interpreted by federal courts and agencies has not been decided in Oregon.[4] Here, however, the

---

[4] *See* Or Const, Art I, § 21; *Evans v. Multnomah County Sheriff's Office,* 184 Or App 733, 739, 57 P3d 211 (2002), *rev den,* 335 Or 180 (2003) ("Assuming that ORS 659A.139 requires (or can require) Oregon courts to follow federal case law decided after the Oregon statute was enacted, *but see Seale et al v. McKennon,*

allegation is that an employer failed to reasonably accommodate a qualified employee by, among other things, failing to engage in a meaningful interactive process with that employee. Thus, the relevant question under both federal and Oregon law is the same, namely, whether the employer could have reasonably accommodated the employee but did not. ORS 659A.139 therefore has no relevance to the question presented.

We turn to the evidence in the record on whether employer reasonably accommodated plaintiff. First, as to the period between 1997 and December 1999, employer offered plaintiff several accommodations, including a part-time tutoring position; a teaching position, that was, at plaintiff's option, .33 time, .66 time, or full time; and a one-year leave of absence.

Plaintiff argues that, at the time that employer offered him his choice of teaching loads, plaintiff's hyperacusis prevented him from teaching more than .33 time and that employer was aware of that fact. Evidence in the record shows that there is an issue of fact on that point. There also is evidence in the record that, in response to plaintiff's continued requests for full-time employment in a quiet environment, employer did not offer plaintiff such employment even though it had open positions for which plaintiff's education and experience qualified him. On the record presented here, a reasonable jury could find that, as a matter of fact, the accommodations that employer offered plaintiff before January 2000 were unreasonable because plaintiff, a full-time employee, was never offered an accommodation that allowed him to continue working for employer full time even though such accommodations were available. *See* ORS 659A.103(1) ("It is declared to be the public policy of Oregon to guarantee disabled persons the fullest possible participation in the social and economic life of the state [and]

215 Or 562, 572-73, 336 P2d 340 (1959) (state law cannot incorporate future federal regulations), nothing in [federal law] is inconsistent with interpreting ORS 659A.112 as we have done here"); *Advocates for Effective Regulation v. City of Eugene*, 160 Or App 292, 311-12, 981 P2d 368 (1999) ("A state statute, for example, cannot incorporate future federal regulations not yet promulgated at the time of the enactment; the effect of doing so is to delegate the power to amend the statute to the federal regulatory authority.").

to engage in remunerative employment * * * without discrimination.").

Turning to employer's accommodation activity in 2000 and beyond, the record shows that in January 2000 employer administratively transferred plaintiff to a position that plaintiff believes effectively accommodated him. Plaintiff argues that the accommodation nevertheless was not reasonable because of the length of time between plaintiff's initial request for full-time employment and when he finally resumed full-time work in September 2000. Employer responds that it was not obligated to reassign plaintiff because it provided plaintiff other reasonable accommodations. It also argues that, under the ADA and therefore under Oregon law, reassignment is the reasonable accommodation of last resort and required only where an employee, even with accommodation, is unable to perform the essential functions of the current position with the employer because of the employee's disability.

In support of that proposition, employer relies on the EEOC *Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act* (2002). However, even in the federal system, the EEOC's guidance is not controlling. *Meritor Savings Bank v. Vinson,* 477 US 57, 65, 106 S Ct 2399, 91 L Ed 2d 49 (1986) (EEOC guidelines are "not controlling upon the courts by reason of their authority" but "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance" (internal quotation marks omitted)). Our own research on the matter reveals that at least some federal courts do hold that reassignment is the reasonable accommodation of last resort. *See, e.g., Smith v. Midland Brake, Inc.,* 180 F3d 1154, 1170-71 (10th Cir 1999). However, we need not determine whether Oregon law also treats the accommodation of reassignment in that manner. Even assuming that reassignment is the accommodation of last resort, the record establishes that there is an issue of fact about whether any accommodation other than reassignment could have effectively accommodated plaintiff. There is evidence in the record that, beginning in 1998, employer interviewed plaintiff for 12 positions for which he was qualified but did not hire him for any of them. It was not until January

2000 that employer offered plaintiff an administrative transfer to such a position, a position that, moreover, did not begin until September 2001. A reasonable jury could conclude that, although employer eventually reassigned plaintiff, the timing of the reassignment rendered it unreasonable.

In summary, as to employer's actions both before and after December 1999, there is evidence in the record from which a reasonable jury could find that employer failed to reasonably accommodate plaintiff. The trial court therefore erred in granting employer's motion for summary judgment on the ground that employer reasonably accommodated plaintiff.

■    We turn to the trial court's alternative basis for granting employer's motion for summary judgment, that plaintiff's application for long-term disability benefits estops him from arguing that he is a qualified individual with a disability and therefore protected by ORS 659A.112. Plaintiff's insurance policy defines disability, in part, as an inability "to perform the material duties of *your own occupation*" for the first 24 months of disability. (Emphasis added.) ORS 659A.115 provides that "a disabled person is otherwise qualified for *a position* if the person, with or without reasonable accommodation, can perform the essential functions of the position." (Emphasis added.) It is not clear that plaintiff's argument that he is disabled under the policy definition in any way contradicts his argument that he is a qualified individual with a disability. An employee could be incapable of performing the duties of his or her own position but still be able to perform the duties of another position. A reasonable juror could find that plaintiff's assertions, that he is both disabled and otherwise qualified, are not contradictory. The trial court therefore erred in granting summary judgment to employer on the ground that plaintiff was estopped from asserting that he was protected by ORS 659A.112.

■    As noted, employer contends that, if the grounds on which the trial court granted employer's summary judgment were erroneous, then we must nonetheless affirm the trial court's judgment based on one of two alternative arguments that employer made below.[5] Employer first argues that, even

---

[5] Employer did not renew on appeal its argument that the summary judgment record does not create an issue about whether plaintiff suffered any damages.

if reassignment were otherwise a reasonable accommodation that it was required to make, that accommodation was unreasonable in light of the CBA between employer and its employees. Under the ADA, as under Oregon law, there are a number of limits on the employer's reassignment obligation, including whether the employee is otherwise qualified for another position, whether reassignment would place an undue hardship on the employer, and whether a vacant position exists.[6] Under the ADA, an employer need not reassign an employee where that reassignment would violate the seniority rights of other employees or other legitimate, nondiscriminatory policies regarding transfers provided by a CBA or imposed by the employer. *US Airways, Inc. v. Barnett*, 535 US 391, 403-04, 122 S Ct 1516, 152 L Ed 2d 589 (2002); *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F3d 667, 678 (7th Cir 1998); *Aka v. Washington Hosp. Center*, 156 F3d 1284, 1305 (DC Cir 1998). Employer argues that the CBA between it and its employees contains such a legitimate nondiscriminatory policy regarding transfers and that it would have violated the policy if it had transferred plaintiff earlier than it did. However, even if Oregon law treats legitimate, nondiscriminatory policies in the same way that they are treated under the ADA, a question that has not yet been decided in Oregon, an issue of fact exists regarding whether an earlier transfer of plaintiff would have violated the policy on transfers and vacancies under the CBA.

The relevant portions of the policy are as follows:

"The major consideration in the transfer of personnel shall be the potential contribution to the program of the District. First consideration will be given to currently employed permanent and probationary personnel in filling any vacancies.

"* * * * *

"An administrative transfer may be made for one of the following reasons:

"(a)  Decline in enrollment in a school.

"(b)  Change in building or department program.

---

[6] *See* 42 USC §§ 12111(9), 12112(b)(5)(A) (2000); ORS 659A.112, ORS 659A.121.

"(c) *Other reasons as approved by the District.*"

(Emphasis added.) Employer contends that, under the CBA, it could not grant plaintiff an administrative transfer to an open position before January 2000 because doing so would have violated the CBA's "first consideration" policy for open positions. However, it appears that employer has the power, under the CBA, to approve an administrative transfer for any reason. It also is unclear whether the first consideration principle applies to transfers or only to open positions for which both employer's employees and other individuals have applied. The record also presents a factual question about whether plaintiff was a "currently employed permanent" employee at any time employer had open positions. If so, plaintiff was actually entitled to preferential transfer treatment under the provision rather than limited by it. Therefore, issues of material fact exist regarding whether the CBA placed any restriction on employer's ability to transfer plaintiff. We reject employer's assertion that there is no issue of fact regarding whether the accommodation of reassignment before January 2000 would have violated a legitimate, nondiscriminatory policy contained in the CBA.

Employer also posits that plaintiff's lost wages are the result of plaintiff's "requested accommodation of part-time employment" and therefore are not "a valid basis for a claim" under ORS 659A.112, citing *Ammann v. Multnomah Athletic Club*, 141 Or App 546, 919 P2d 504, *rev den*, 324 Or 488 (1996). In *Amman*, the plaintiff sought reinstatement to her former work hours as a reasonable accommodation of her disability. The plaintiff did "not argue that she needed the other 17-1/2 hours of work to enable her to physically or mentally perform her work duties, nor [did] she argue that [the employer] failed to reasonably accommodate her disabilities by not allowing her sufficient time to recuperate from the effects of her [disability]." *Id.* at 552. Rather, the plaintiff alleged that she was able to perform all the functions of her position without any accommodation from her employer. *Id.* at 553. *Amman* is inapposite. Unlike the plaintiff in *Amman*, plaintiff alleges, among other things, that he cannot perform the functions of his position even with an accommodation and was therefore entitled to the reasonable accommodation of reassignment.

Employer's second alternative argument is that it is not liable to plaintiff because plaintiff voluntarily worked part time. The record indicates that plaintiff repeatedly sought full-time employment with employer but worked part time because he could only work part time in the position that employer offered him. We therefore reject employer's second alternative argument.

The summary judgment record establishes that there are factual issues regarding whether the accommodations that employer granted to plaintiff were reasonable. The record also establishes that there are factual issues regarding employer's alleged defenses. Hence, the trial court erred in granting employer's summary judgment motion.

Reversed and remanded.