**Amy STEENMEYER, Plaintiff,**

v.

**The BOEING COMPANY, Defendant.**

**Case No. C13–2184 MJP.**

United States District Court,
W.D. Washington,
at Seattle.

Signed March 12, 2015.

Jeffrey Lowell Needle, Seattle, WA, for Plaintiff.

Deidra A. Nguyen, Ryan Paul Hammond, Littler Mendelson, Seattle, WA, for Defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MARSHA J. PECHMAN, Chief Judge.

THIS MATTER comes before the Court on Defendant The Boeing Company's ("Boeing's") Motion for Summary Judgment. (Dkt. No. 21.) Having considered the Motion, Plaintiff Amy Steenmeyer's Response (Dkt. No. 23), Boeing's Reply (Dkt. No. 26), and all related papers, the Court hereby DENIES the Motion.

### Background

Ms. Steenmeyer was hired into a permanent project manager position at Boeing in December 2011, after she had worked as a Boeing contractor for about six years.

(Oraze Dep., Dkt. No. 21–2, Ex. A at 47:15–20; *see* Steenmeyer Dep., Dkt. No. 24–1, Ex. A at 117–135.) Ms. Steenmeyer's most recent contract position was under the supervision of Mr. Oraze, and he was also the person to hire her on a permanent basis. (Oraze Dep., Dkt. No. 24–1, Ex. B at 34:14–25, 35:1–4, 39:8–10.) The contract position under Mr. Oraze did not require her to work away from the Everett work site, though she had been required to travel to sites within the Seattle metro area during previous stints as a contractor. (Oraze Dep., Dkt. No. 24–1, Ex. B at 46:15–19; Steenmeyer Dep., Dkt. No. 24–1, Ex. A at 120:25–125:8.) She was not required to work away from the Everett site as an employee. (*Id.* at 48:4–10.)

Ms. Steenmeyer had been seated in Row 1 of the workspace (the closest row to the restroom) during much of the time she worked under Mr. Oraze, including the months of September 2011, February, April, and May of 2012. (Steenmeyer Decl., Dkt. No. 25 at 2.) Ms. Steenmeyer believed her desk in Row 1 to be less than 30 seconds from the restroom. (*Id.*) On May 3, 2012, Mr. Oraze asked Ms. Steenmeyer to move to Row 3, farther from the restroom, to be seated near coworkers. (*See* Dkt. No. 22–4, Ex. R at 42.) She objected to the move by voicing concerns about those coworkers rather than referring to medical issues. (*Id.*) Mr. Oraze accommodated her request to stay in Row 1 at that time. (*Id.*)

Tensions flared between Ms. Steenmeyer and Mr. Oraze after he found out on May 8, 2012, that she had applied for another position at Boeing under a different supervisor. (*See* Oraze Dep. Dkt. No. 22–1 at 56:8–57:14; Steenmeyer Dep., Dkt. No. 22–1 at 194:3–10.)

During the month of June, Mr. Oraze required Ms. Steenmeyer to move to Row 3 by the beginning of July. (*See* Dkt. No. 22–4, Ex. S.) She again protested, referring to conflicts with coworkers, but was overruled. (*Id.*)

On July 18, Mr. Oraze gave Ms. Steenmeyer a negative performance review. (*See* Dkt. No. 22–4, Ex. R.)

On July 26, she asked to be moved back to Row 1, citing its closer distance from the restroom. (*See* Steenmeyer Decl., Dkt. No. 25 at 2.) Although this may have been the first time Ms. Steenmeyer requested an accommodation for a specific medical condition, Defendant Boeing concedes that she had a ten-year history of chronic urinary tract infections. (Dkt. No. 21 at 6; *see* Dkt. No. 25 at 2.) In addition, Mr. Oraze had been made aware of at least one prior "bladder issue" in February 2012 that had disrupted Ms. Steenmeyer's workday. (Dkt. No. 24–3, Ex. J at 25.) Ms. Steenmeyer's first request for an accommodation was accompanied by a health care provider's note that stated "Due to serious medical condition patient requires frequent visits to the bathroom and needs to be seated near the bathroom." (Dkt. No. 22–5, Ex. W at 2.)

Mr. Cannistraci, a physician's assistant with Boeing Medical, found the note to be ambiguous and requested additional documentation from Ms. Steenmeyer's health care provider. (*See* Cannistraci Dep., Dkt. No. 22–2, Ex. F at 32:22–44:7.) Specifically, he sought information about the frequency of the need to urinate and within what distance from the restroom her seat should be located. (*See id.* at 45:7–23.) Ms. Steenmeyer then provided Boeing with a "Reasonable Accommodation and Health Care Provider Information Form" on Boeing letterhead which noted, "Patient needs to be within 30 seconds of the bathroom + needs to urinate every hour to prevent future urinary tract infections." (Dkt. No. 24–3, Ex. N at 33.) Boeing points out that Ms. Steenmeyer had suggested the 30-second limitation to her

health care provider. (Dkt. No. 21 at 7; Dkt. No. 22–2, Ex. E at 37:15–21.)

The reasonable accommodation process at Boeing segregates the medical restriction and the people implementing the restriction from the medical records supporting the restriction and medical staff familiar with those records. (*See* Lashua Dep., Dkt. No. 22–3, Ex. G. at 30:4–31:25.) Here, the information that reached the Disability Management Representative and Reasonable Accommodation Focal, Katie Lashua, substituted the phrase "work location needs to be within 30 seconds of bathroom" for Ms. Steenmeyer's medical provider's original phrase "needs to be seated near the bathroom." (*See* Boeing Injury & Illness Report, Dkt. No. 22–5, Ex. CC ("Work location needs to be within 30 seconds of bathroom. Employee needs bathroom break every hour.").) Although "work location" is arguably ambiguous, Ms. Lashua and Mr. Oraze both initially assumed the phrase meant the placement of Ms. Steenmeyer's desk. (*See* Dkt. No. 24–2, Ex. D at 75:7–10; Dkt. No. 24–1, Ex. B at 135:2–14.)

After receiving Mr. Cannistraci's written restriction, Ms. Lashua met with Ms. Steenmeyer and Vocational Rehabilitation Counselor Ken Eriksen, and helped Ms. Steenmeyer to move temporarily back to Row 1. (*See* Dkt. No. 22–5, Ex. AA at 19; Dkt. No. 24–2, Ex. D at 65:7–66:18.) The move was temporary because Mr. Oraze was on vacation. (Steenmeyer Decl., Dkt. No. 25 at 3; Dkt. No. 22–5, Ex. AA at 19–21.)

Upon Mr. Oraze's return, a meeting between Ms. Steenmeyer, Ms. Lashua, Mr. Oraze, Mr. Eriksen, and human resources representative Carol Hawthorne was convened. (Dkt. No. 225, Ex. AA at 22.) Mr. Oraze objected to Ms. Steenmeyer being moved to Row 1 and indicated the reason she was placed in Row 3 was not related to her medical condition. (Dkt. No. 24–1, Ex.

B at 111:11–112:18; Dkt. No. 22–5, Ex. AA at 22.) Ms. Steenmeyer then ended the meeting and asked for a union representative to be present at the next meeting. (Dkt. No. 22–5, Ex. A at 22.)

The next meeting took place on September 6, 2012, with Ms. Steenmeyer, Ms. Lashua, Mr. Oraze, Ms. Hawthorne, Mr. Eriksen, and union representative Bob Weiss present. (Dkt. No. 22–5, Ex. AA at 26.) At the meeting, Ms. Lashua, Mr. Eriksen, and others decided that Mr. Eriksen would conduct a time study investigating the relative distances between Ms. Steenmeyer's potential desk locations and the restroom. (*Id.*; Dkt. No. 24–2, Ex. E at 38:11–16.)

On September 11, 2012, Mr. Oraze wrote Ms. Lashua an email in which he proposed a more literal interpretation of the 30–second "work location" restriction and argued that Ms. Steenmeyer would not be able to perform her job at all with the restriction in place:

From: Oraze, Paul A

Sent: Tuesday, September 11, 2012 1:38 PM

To: Lashua, Katie J

Cc: EXT–Eriksen, Kenneth G, Hawthorne, Carol R

Subject: Help needed clarifying restriction

Hello Katie, I am in a quandary as to what I can or cannot do as far as assigning Amy Steenmeyer SOW. Does the restriction state that Amy's job assignment cannot put her outside of 30 seconds from a bathroom ever? In the meeting she stated that the current temporary seat works because all she is doing is providing visibility. That is only aprox [sic] 5% of her job. When she walked off the job unannounced I had to assign her customer and work package to another Engineering PM.

Now she is requesting why she is no longer responsible for that work package. The job requires the PM to learn the engineering teams [sic] business, support meetings and at times travel to the suppliers [sic] site. The job cannot be performed successfully if you can't be outside of 30 seconds from a restroom. Also, I need to continue having discussions on how to reverse her poor performance prior to the restriction, but if I am violating her restriction by trying to get her to perform her current job, I should not have the discussion until I know what I can have her do. I really need help understanding what I can do as far as assigning her work. I do not have a position, nor do I know of a job where she can work that is 30 sec [sic] or less from a restroom. You have to be able to support the customer.

For the time study:

Her temporary desk is 2015–1.6

Her assigned desk is 2813–2.9

(Dkt. No. 22–5, Ex. DD at 67.)

The email prompted Ms. Lashua to clarify the restriction with Sue Bloom, Disability Nurse Consultant for Boeing Medical, on September 12. (*See* Dkt. No. 22–5, Ex. AA at 27; Dkt. No. 22–5, Ex. DD at 67.) Ms. Bloom, interpreting Mr. Cannistraci's written restriction rigidly and consulting no other sources, told Ms. Lashua that Ms. Steenmeyer needed to be within 30 seconds of a restroom at all times. (*See* Bloom Decl., Dkt. No. 22–3, Ex. H at 33:20–53:6.) Ms. Lashua testified at her deposition that "[t]he restriction to The Boeing Company is black and white, that she was not to be greater than 30 seconds." (Dkt. No. 24–2, Ex. D at 108:22–24.)

Mr. Eriksen and an assistant conducted the planned time study on September 13, measuring the time between Ms. Steenmeyer's temporary desk in Row 1 and the restroom. The time needed to travel this distance was measured at thirty-two sec-

onds. (*See* Dkt. No. 24–2, Ex. E at 39:4–40:17.)

On September 14, 2012, a telephone call between Ms. Lashua, Mr. Oraze, Ms. Hawthorne, Mr. Eriksen, and another individual reviewed the results of the time study. (*See* Dkt. No. 22–5, Ex. AA at 28.) Mr. Oraze then stated for the first time that domestic and international travel was necessary for Ms. Steenmeyer's position. (*Id.*) Another concern raised on this call was that meetings would take Ms. Steenmeyer out of the thirty-second range of the restroom. (*Id.*) At her deposition, Ms. Lashua agreed that she concluded from the time study that Ms. Steenmeyer could not be accommodated within her medical restriction. (Dkt. No. 24–2, Ex. D at 105:5–18.) It did not matter to Ms. Lashua whether Ms. Steenmeyer felt that two seconds by which her temporary desk location exceeded the medical restriction made any difference. (*Id.* at 105:22–25.)

On September 19, a second meeting was held with Ms. Steenmeyer in attendance. (Dkt. No. 22–5, Ex. AA at 28.) Although Ms. Lashua's notes in a document labeled History Detail Report reflect that Ms. Steenmeyer was reacting positively to her temporary desk location, Ms. Steenmeyer was nonetheless informed that she was being placed on leave because she was not able to perform her job with the medical restriction. (*Id.*) She later learned from an insurance provider that the leave would be unpaid. (Dkt. No. 24–3, Ex. U at 63.)

Ms. Steenmeyer returned to her health care provider on September 21 to have the restriction broadened to "within 30 sec—1 minute to bathroom." (*See* Dkt. No. 24–3, Ex. Q at 46.) The form also clarified that "[u]sually after she empties her bladder she can be comfortable up to one hour." (*Id.*)

Boeing nonetheless continued to interpret the restriction rigidly and determined

that she could not be accommodated in her current position even with a 60–second restriction; nonetheless, it began the medical reassignment process searching for any other position in which she could be accommodated. (*See* Dkt. No. 22–5, Ex. AA at 36.)

The record is unclear as to the date, but Mr. Eriksen eventually completed a Reasonable Accommodation Review Form which stated in part "It should be noted that the employee has indicated that she interprets work location to mean that the location of her desk needs to be within [60] seconds of a restroom. With that accommodation, and a restroom break every hour, she has indicated that she things she can perform her [job] requirements. It seems reasonable that the employee would be able to arrange her schedule to allow for a restroom break every hour, while [ ] Everett site and while working at supplier sites. It would need to be determined whether this could be assured while she is traveling to and [from] supplier sites." (Dkt. No. 24–3, Ex. R at 50; Eriksen Dep., Dkt. No. 24–2, Ex. E at 71:22–73:21.) Mr. Eriksen's opinion did not change Boeing's interpretation restricting Ms. Steenmeyer to work within 60 seconds of a restroom at all times.

Ms. Steenmeyer entered counseling in August 2012, allegedly to cope with her treatment by Boeing during the accommodation process. (*See* Dkt. No. 24–2, Ex. G at 25:2–13; Dkt. No. 25 at 3–4.) Months later, her psychologist recommended that she terminate the reassignment process and not attend an interview Boeing had scheduled for her pursuant to the medical reassignment process. (*See* Dkt. No. 25 at 4; Dkt. No. 24–3, Ex. AA at 79.)

Boeing now moves for summary judgment on Ms. Steenmeyer's claims for intentional discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act and the Washington Law Against Discrimination.

## Discussion

### I. Legal Standard

Federal Rule 56(a) provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In determining whether a factual dispute requiring trial exists, the court must view the record in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All material facts alleged by the nonmoving party are assumed to be true, and all inferences must be drawn in that party's favor. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1088 (9th Cir.2008).

A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### II. Qualified Individual under the ADA

Boeing argues that Ms. Steenmeyer is not a "qualified individual" within the meaning of the ADA because she is unwilling to return to Boeing in any capacity. (Dkt. No. 21 at 16.) The ADA prohibits discrimination against "a qualified individual" on the basis of disability. 42 U.S.C. § 12112(a). Ms. Steenmeyer bears the burden of proving she is a "qualified individual with a disability," defined as "a person who, with or without reasonable accommodation, can perform the essential functions of her job." *Weyer v. Twentieth*

*Century Fox Film Corp.,* 198 F.3d 1104, 1108 (9th Cir.2000) (internal quotation marks and citations omitted). The determination is made at the time of the adverse employment decision. (*Id.* at 1112.)

■ Viewing the evidence in the light most favorable to Ms. Steenmeyer, the Court notes that the Boeing employee assigned to review Ms. Steenmeyer's accommodation request process found it "reasonable" that she would be able to perform most or all of her work within her medical restrictions at the time she was placed on the primary alleged adverse employment action, an unpaid leave of absence. (Dkt. No. 24–3, Ex. R at 50.) The out-of-circuit case cited by Boeing discusses an employee whose stress-based reaction to her supervisor did not render her disabled. *See Weiler v. Household Finance Corp.,* 101 F.3d 519, 523, 524 (7th Cir.1996). In the panel's opinion, the psychotherapist's judgment that the employee could not work for her supervisor was based on the original stress-based reaction to the supervisor, rather than, as in Ms. Steenmeyer's case, a later reaction to the alleged discrimination by Boeing on the basis of a physical disability. (*See id.* at 524.)

Ms. Steenmeyer is not rendered unqualified under the ADA merely because her psychologist recommended that she not work for Boeing months after the primary alleged adverse employment action occurs.

### III. Interactive Process under the Failure to Accommodate Claims

■ Boeing next argues that Ms. Steenmeyer may not prevail because Boeing fulfilled its obligations in the interactive process and Ms. Steenmeyer cut short the process. (Dkt. No. 21 at 17.) A prima facie case for failure to accommodate under both the ADA and WLAD requires a plaintiff to show that (1) she is disabled; (2) she is qualified for the job in question and capable of performing it with

reasonable accommodation; (3) the employer had notice of her disability; and (4) the employer failed to reasonably accommodate her disability. *McDaniels v. Group Health Co-op.,* 57 F.Supp.3d 1300, 1314–15, No. C13–1689–JLR, 2014 WL 5471991, *11 (W.D.Wash. Oct. 29, 2014) (citing *Samper v. Providence St. Vincent Med. Ctr.,* 675 F.3d 1233, 1237 (9th Cir. 2012); *Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1088–89 (9th Cir.2002); *Davis v. Microsoft Corp.,* 149 Wash.2d 521, 532, 70 P.3d 126 (2003)). If an employee identifies a disability that may require accommodation, the employer has a mandatory duty under the ADA to engage in a good faith interactive process of identifying essential and nonessential job tasks and possible accommodations, assessing the reasonableness and effectiveness of the accommodations, and implementing the accommodation most appropriate for the employee and employer that does not impose an undue hardship on the employer. *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1114 (9th Cir.2000), *vacated in part on other grounds* by 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002). The employee's expressed preference as to accommodation must be taken into consideration. *Id.*

■ In order to make the argument that it fulfilled its obligations in the interactive process, Boeing persists in interpreting Ms. Steenmeyer's medical restriction as needing to be within 60 seconds of a restroom at all times—an interpretation which is called into doubt by a number of documents in the record as well as the employee's documented preference. (*See id.* at 18–19; *cf.* Dkt. No. 24–3, Ex. R at 50; Dkt. No. 24–3, Ex. V at 65.) Boeing further argues that to the extent Ms. Steenmeyer felt that its interpretation was in error, it was her obligation to obtain a clarification from her health provider. (*Id.* at 21.) Because a plain reading of the

actual requests for accommodation written by Ms. Steenmeyer's health care provider and submitted to Boeing Medical do not compel Boeing's rigid interpretation, the case Boeing cites in which the plaintiff was limited by a letter from his personal physician to a "desk job" but sought a position which was indisputably not a "desk job" is inapposite. *See Allen v. Pacific Bell*, 348 F.3d 1113, 1115 (9th Cir.2003). Boeing is not entitled to summary judgment on the basis that it fulfilled its obligations under the interactive process.

## IV. Adverse Action and Pretext under the Discrimination Claims

■ Boeing also argues that Ms. Steenmeyer's discrimination claims fail for lack of an adverse action and pretext. (Dkt. No. 21 at 23.) Plaintiffs in ADA cases may elect to oppose summary judgment by using the "motivating factor" test for intentional discrimination in which pretext is not at issue. *See Dominguez–Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir.2005); *Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1065 & n. 67 (9th Cir.2005). The Court therefore does not reach a decision on whether Ms. Steenmeyer has put forth sufficient evidence of pretext.

■ As to adverse action, Boeing argues that placing Ms. Steenmeyer on unpaid leave cannot constitute an adverse action because it may constitute a reasonable accommodation. (*See* Dkt. No. 21 at 24.) The fact that unpaid leave may, in certain circumstances and where requested, constitute a reasonable accommodation does not mean that it cannot also be an adverse action, particularly where the employee is placed on unpaid leave involuntarily. *See Maya v. Leprino Foods*, No. 1:12–cv–1479 AWI GSA, 2014 WL 1091251, *23 (E.D.Cal. March 18, 2014).

## V. Protected Conduct and Adverse Action under Retaliation Claims

■ Finally, Boeing argues Ms. Steenmeyer's retaliation claims fail for lack of protected activity and lack of adverse action. To establish a prima facie case of retaliation under the ADA or WLAD, a plaintiff must show (1) that he or she engaged in or was engaging in activity protected by the ADA or WLAD, (2) the employer subjected him or her to an adverse employment decision, and (3) that there was a causal link between the protected activity and the employer's action. *Barnett*, 228 F.3d at 1121; *see Coville v. Cobarc Services, Inc.*, 73 Wash.App. 433, 439, 869 P.2d 1103 (1994). Making a request for an accommodation is a protected activity. *See Coons v. Secretary of U.S. Dept. of Treasury*, 383 F.3d 879, 887 (9th Cir.2004). Ms. Steenmeyer has also pointed to facts in the record suggesting that Boeing responded to her request for accommodation by interpreting her medical restriction and her job requirements in an increasingly constrictive and expansive manner, respectively, that foreclosed her opportunity to work in her current or any similar position.

■ Ms. Steenmeyer has also introduced genuine issues of material fact as to whether her failure to appear for an interview and ultimate medical discharge should be considered a constructive discharge that qualifies as an adverse employment decision. Constructive discharge is "an employee's reasonable decision to resign because of unendurable working conditions." *Penn. State Police v. Suders*, 542 U.S. 129, 141, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). A jury may conclude that Boeing's alleged accommodation process, increasingly stringent interpretation of Ms. Steenmeyer's medical restriction, and prolonged period of unpaid leave

was not endurable by a reasonable employee.

## Conclusion

Because Ms. Steenmeyer has demonstrated genuine issues of material fact that preclude summary judgment for Boeing on each of her claims, Boeing's Motion for Summary Judgment is DENIED.

The clerk is ordered to provide copies of this order to all counsel.